## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

ALVINITO BLUEBIRD
ADC # 147748                                                                                    PLAINTIFF

V.                                    No. 4:21-CV-603-KGB-JTR

MICHELLE DENISE GRAY, Warden,
Pine Bluff Work Complex Unit;
MARY G. COBBS, Major, Pine Bluff
Work Complex Unit; SKINNER, Captain
Pine Bluff Work Complex Unit; ARKEAME
R. JOHNSON, Lieutenant, Pine Bluff Work
Complex Unit                                                                                    DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I.     Introduction

On July 2, 2021, Plaintiff Alvinito Bluebird ("Bluebird"), a prisoner incarcerated in the Tucker Maximum Security Unit ("TMSU") of the Arkansas

Division of Correction ("ADC"), filed a *pro se* § 1983 Complaint alleging that Defendants violated his constitutional rights from August 27, 2020 through March 31, 2021. *Doc. 2*. On September 8, 2022, after the Court screened the Complaint, Bluebird was allowed to proceed with: (1) sexual harassment claims against Deputy Warden Michelle Denise Gray ("Gray"), Major Mary G. Cobbs ("Cobbs"), Captain Skinner ("Skinner"), and Lieutenant Arkeame R. Johnson ("Johnson") for allegedly harassing Plaintiff because of his sexual orientation; and (2) a failure-to-protect claim against Johnson for allegedly labeling him a "snitch." *Doc. 14; Doc. 25.*

On December 8, 2022, Defendants filed a Motion for Summary Judgment (*Doc. 45*), a Brief in Support (*Doc. 46*), and a Statement of Undisputed Facts (*Doc. 47*). Defendants argue that all Bluebird's claims must be dismissed because he failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act ("PLRA").

On December 12, 2022, I entered an Order informing Bluebird that he had a right to file a Response and that, in doing so, he "must separately file a 'short and concise statement of material facts as to which he contends a genuine dispute exists to be tried,'" as required by Local Rule 56.1. *See Doc. 48 at 1*. Bluebird has not filed a Response to Defendants' Motion for Summary Judgment or attempted to controvert any of the facts set forth in Defendants' Statement of Undisputed Facts,

and the time to do so has long since passed. Thus, the Motion is joined and ready for disposition.

## II. Discussion

### A. To Fully and Properly Exhaust His Administrative Remedies, Bluebird was required to Comply with the ADC's Policies, Directives and Rules Governing Exhaustion

The PLRA requires prisoners to exhaust their administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 88–91 (2006).

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, before initiating this action, Bluebird was required to fully

and properly exhaust his administrative remedies in accordance with the ADC's exhaustion requirements.

The ADC's directives and regulations governing exhaustion require that, as to each of his claims, a prisoner must: (1) "specifically name each individual involved;" (2) state only one problem or issue per grievance; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." *See Doc. 35-1* ADC Administrative Directive 14-16 ("AD 14-16"), § IV(C)(4), (D)(2), & (E)(2). The grievance forms themselves also restate these instructions to ensure prisoners are aware of them. *Id*. at Att. 1 ("**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected.") (emphases in original). If an inmate intends to grieve more than one issue, he or she "must use a separate [grievance] form for each issue[, as] [o]nly one issue will be addressed in the response to a grievance." *Id.* at § IV(D)(2). Any [a]dditional problems/issues contained in the grievance will not be addressed and will not be considered as exhausted." *Id*. Finally, the ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies *as to all defendants at all levels* of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. *Id.* at § IV(N) (emphasis added); *see*

*also Id.* at § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance *prior* to filing a lawsuit).

Finally, the ADC requires prisoners to fully and properly exhaust their grievances by processing through a three-step grievance review process. *Id.* at §§ IV(D)–(G). At Step One, a prisoner must initiate an information resolution raising his complaint and naming each officer or staff member against whom he is raising the complaint. At Step Two, a prisoner must file a formal grievance raising the unresolved complaint describe in the informal resolution. If the Step Two grievance is denied, a prisoner must file a Step Three appeal to the ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision denying the grievance. *Id*.

**B.   The Undisputed Material Facts[1]**

1.   Terri Grigsby ("Grigsby"), the ADC's Inmate Grievance Coordinator, reviewed Bluebird's grievance file from the date the constitutional violations allegedly began, August 27, 2020, through the date Bluebird initiated this action, July 2, 2021. *Doc. 45-1 at 7–8, ¶ 33.*

---

[1] The source for these facts is the now uncontroverted Statement of Undisputed Facts filed by the Defendants (*Doc. 47*) along with its supporting documents: (1) the Declaration of ADC Inmate Grievance Coordinator Terri Grigsby (*Doc. 45-1*); and (2) Bluebird's relevant grievance history (*Doc. 45-3*). All of those facts should now be considered undisputed for purposes of Defendants' Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(c).

2. According to Grigsby's sworn Declaration, Bluebird filed only two grievances *potentially* relevant to this action: PB-20-00207 and MX-21-00858. *Id. at 8, ¶¶ 34–36*.

3. In PB-20-00207, Bluebird complained that Defendant Johnson threatened and harassed him for not cleaning the barracks. *Doc. 45-4 at 3*.

4. In MX-21-00858, Bluebird complained that he was attacked by a fellow inmate on February 24, 2021. *Doc. 45-5 at 4*. Even though he immediately informed Defendant Skinner, Defendant Johnson, and other non-Defendant ADC employees, an investigation was not initiated until March 10, 2020. *Id.* Bluebird then complained that he had tried to initiate a grievance regarding the incident, but non-Defendant ADC employees failed to timely respond to the grievance. Finally, Bluebird complained that Defendants Cobbs, Johnson, and Gray "discriminate, retaliation, and despite [him] for no reason" and quoted the ADC's Administrative Directive that prohibits discrimination and harassment based on "race, color, sex, religion, national origin, age [and] disability." *Id.*

5. At Steps One and Two, the responding officials rejected MX-21-00858 because it was not filed until May 24, 2021—more than fifteen days past either the February 24 attack *or* March 10 investigation. *Doc. 45-5 at 4–5*. At Step Three, the Assistant Director rejected the grievance because: (1) Bluebird raised multiple issues; (2) Bluebird received a major disciplinary violation for his role in the

February 24 attack, which is a non-grievable issue; (3) there was no record of the previous grievance that Bluebird allegedly tried to file; and (4) even if Bluebird *had* tried to file a previous grievance and not received a response, there are steps in the ADC's grievance procedure Bluebird could have followed to proceed with the grievance. *Id. at 1, 6.* Based on the various violations of the ADC's grievance procedure, the Assistant Director refused to address Bluebird's complaints on the merits. *Id. at 6.*

    **C.**    **Based On These Undisputed Facts, Bluebird Failed to Fully and Properly Exhaust His Administrative Remedies On His Pending Claims**

Defendants argue that Bluebird's Complaint should be dismissed because he failed to exhaust his available administrative remedies on any claim he is bringing in this action. Bluebird is proceeding with: (1) sexual harassment claims against Defendants Gray, Cobbs, Skinner, and Johnson for allegedly harassing Bluebird based on his sexual orientation; and (2) a failure-to-protect claim against Johnson for allegedly labeling Bluebird a "snitch." *Doc. 14; Doc. 25*.

    **1.**   **Bluebird Failed to Exhaust His Sexual Harassment Claims**

In his Complaint, Bluebird alleges that he is bi-sexual and identifies multiple occasions where Defendants allegedly harassed him because of his sexual orientation. *Doc. 2 at 4*. For example, Bluebird alleges that Defendant Gray said "she don't like gay, bisexual, transgender, or queer people" and would write Bluebird up

7

the next time she saw him with his eyebrows "penciled in." *Id.* at 5. He also alleges that Defendant Johnson made "verbal comments" about Bluebird's sexual lifestyle while he "was in line to get medicine at chow hall." *Id.* at 4–5.

The undisputed facts show that Bluebird filed only two grievances *potentially* relevant to the sexual harassment claims he is asserting in this action: PB-20-00207 and MX-21-00858.

In PB-20-00207, Bluebird grieved that Defendant Johnson threatened and harassed him for *not cleaning the barracks*. This allegation of harassment is separate and distinct from the *sexual orientation* harassment claim raised in the Complaint. Accordingly, Bluebird cannot rely on PB-20-00207 to establish that he fully and properly exhausted any sexual harassment claim he is asserting in this action.

In MX-21-00858, Bluebird vaguely asserted that he was being harassed, but never stated the harassment was *based on his sexual orientation*. Additionally, Bluebird never received a response on the merits of his complaint because MX-21-00858 was properly rejected for a myriad of procedural defects. *See Woodford*, 548 U.S. at 90. Accordingly, Bluebird also cannot on MX-21-00858 to establish that he fully and properly exhausted any sexual harassment claim he is asserting in this action.

Because Bluebird cannot rely on either PB-20-00270 or MX-21-00858 to establish he exhausted his sexual harassment claims against Defendants Gray, Cobbs, Skinner, and Johnson, those claims should be dismissed, without prejudice.

### 2. Bluebird Failed to Exhaust His Failure-to-Protect Claim

For his failure-to-protect claim, Bluebird alleges that Defendant Johnson "started rumors" that Bluebird was a "snitch." *Doc. 2 at 4*. However, based on the undisputed grievance history, Bluebird never filed a grievance complaining that he had been labeled a "snitch." Accordingly, Bluebird's failure-to-protect claims against Johnson should be dismissed, without prejudice, for failure to exhaust administrative remedies.

### III.   Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (*Doc. 45*) be GRANTED based on Bluebird's failure to exhaust his: (1) sexual harassment claims against Gray, Cobbs, Skinner, and Johnson; and (2) his failure-to-protect claim against Johnson.

2. Plaintiff's Complaint (*Doc. 2*) be DISMISSED, without prejudice.

DATED this 16th day of August, 2023.

_____
UNITED STATES MAGISTRATE JUDGE